**16-80125-CV-Cohn/Seltzer**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

FILED by OTS D.C.
ELECTRONIC

Jan. 25, 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

CASE NO.: 2016-

**ALAN AMRON** Pro se

Plaintiff,

vs

**COMPLAINT
DEMAND FOR TRIAL BY JURY**

**3M MINNESOTA MINING & MANUFACTERING
COMPANY AND ARTHUR FRY**

Defendants.

_____/

**COMPLAINT
JURISDICTION AND VENUE**

Plaintiff Alan Amron ("Plaintiff" "Amron"), Complaint states as follows:

1. This is an action brought for the purpose of determining an actual controversy of first to invent inventorship (conception date, put into commerce date, first to invent was in 1973 the USPTO rule) under the United States Patent and Trademark office patent rights and copyrights rules, regulations, laws and statues 35 U.S.C. Sections 34, 42 and 102 (a) (b) (c), and for unfair representation of the facts arising under the Trademark Act of 1946, 15 U.S.C. section 1051 et. As amended (hereinafter "the Lanham Act") and the Sherman Antitrust Act 15 U.S.C. Section 1-7 and the Clayton Act 15 U.S.C. section 1121. Venue in this district is proper under 28 U.S.C. Section 1391 and 1400 (b).

## BACKGROUND

2. Inventor and inventorship in the United States was in 1973 defined to comprise of two steps: (1) conception of the invention (Amron in 1973 and made it public - 3M in 1974 and concealed it) and (2) reduction to practice of the invention (Amron in 1974 put into practice under the product name *Press-on Memo* - 3M in 1977 put into practice under the product name *Press n' Peel*). When an inventor conceives of an invention and *diligently* reduces the invention to practice (by practicing the invention), the inventor's date of invention will be the date of conception. Thus, provided an inventor is diligent in actually reducing the invention to practice and not **CONSEALING IT**, he or she will be the first inventor and the inventor entitled to inventorship, a patent, even if another files a patent application, constructively reducing the invention to practice, before the inventor. The issue in this litigation is "Inventorship". In 1973 the "First to invent" (Inventorship) was the rule of patent law. (See as **Exhibit C-I** attached here, including but not limited to the U.S. Federal case CV-97-7281 Amron vs 3M in the Eastern District of New York, and its 29 Exhibits) The Exhibits 1-29 in the Amron vs 3M case clearly show Amron's original Conception inventorship date of 1973, and Plaintiffs putting it into practice in 1974, and put in use in commerce offering for sale in 1974. Defendants "3M' and "Fry" have publically admitted to invention conception date by accident in Church in 1974, clearly one year after Amron 1973 shown date. **(See attached Exhibits A and D)**

The facts in this (David) Plaintiff "Amron" vs (Goliath) Defendants "3M" and "Fry" case are simple;

Plaintiff "Amron" invented the combination sticky notes paper and pads as Press-On Memo in **1973. (See attached Exhibits D-I)**

2

Plaintiff "Amron" introduced his invention in commerce the combination sticky note paper and pads as Press-On Memo in **1974. (See attached Exhibits D-I)**

Defendant Arthur "Fry" invented a combination sticky and note paper and pads in **1974** and CONCEALED IT until 1977 as Press n' Peel. **(See attached Exhibit A)**

Defendant "3M" introduced in commerce a combination sticky note paper and pads as Press n' Peel publicly in **1977,** then again as Post-it note in **1980. (See attached Exhibit A)**

Defendants "Fry" and "3M' reintroduced in commerce a combination sticky note paper and pads as Post-it Note publicly in **1980. (See attached Exhibit A)**

**It seems a matter of "Res judicata" since all the facts here are publically known and clear:**

"Amron" invented the combination sticky notes and pads in 1973, and didn't conceal it but made it public. Arthur "Fry" and "3M" claimed to have invented the combination sticky notes and pads in 1974, but in fact they "concealed it" from the public until 1977 when they finally released it named as Press n' Peel. Amron is the clear inventor and should have proper inventorship here.  Its simple;

1- Press-On Memo 1973 "Amron"
2- Press n' Peel 1977 "3M" "Fry"
3- Post-it Note 1980 "3M" "Fry"

> *"A rose by any other name would smell as sweet"*
> *William Shakespeare*

"A rose by any other name would smell as sweet" is a frequently referenced part of William Shakespeare's play *Romeo and Juliet,* in which Juliet seems to argue that it does not matter that Romeo is from her rival's house of Montague, that is, that he is named "Montague."

**The reference is often used to imply that the names of things do not affect what they really are.**

## PARTIES

   3.   Plaintiff Alan Amron is a citizen of Palm Beach County, State of Florida.

3

4. Plaintiff "Amron" is a professional inventor making his living all of his life as a known American inventor, with 39 United States Patents awarded and issued to him in several different product industries. His name and reputation as an American inventor has been severally damaged directly due to the Defendants actions.

5. Upon information and belief, Defendant 3M Minnesota Mining and Manufacturing Company a Consumer products maker and distributer ("Defendant" or "3M") is a company formed and existing under the laws of the State of Minnesota. (The basis of Plaintiffs' information and belief is the listed corporate address by Defendant in 3M vs IRS case.)

6. Upon information and belief, Defendant Arthur Fry is/was an employee of Defendant "3M", a Consumer products maker and distributer ("Defendant" or "FRY") is/was an employee of a company formed and existing under the laws of the State of Minnesota. (The basis of Plaintiffs' information and belief is the listed corporate address by Defendant in 3M vs IRS case.)

7. Upon information and belief, for purposes of diversity of citizenship jurisdiction in the federal Courts, Defendants are a citizens of states other than Florida since, upon information and belief, none of its partners is a citizen of the State of Florida. (Again, the basis of Plaintiffs' information and belief is the Defendants own websites and other litigations.)

8. This Court has jurisdiction over this matter based upon diversity of citizenship under 28 USC § 1332(a) because the amount in controversy exceeds $75,000.

9. Venue is proper in this Court because the Plaintiff resides in the district in which this Court sits.

10. Post-it Notes is an over-the-counter iconic world known stationery item.

11. Upon information and belief, at all relevant times, the Defendants were the manufacturer of Press n' Peel and Post-it Notes.

12. Upon information and belief, at all relevant times, the Defendants were a distributors of Post-it Notes.

13. Upon information and belief, at all relevant times, the Defendants were a seller of Press n' Peel and Post-it Notes.

14. Upon information and belief, at all relevant times, Post-it Notes was marketed by Defendants as an appropriate over-the-counter stationery sticky repositionable, reusable memo paper pad product.

15. Based upon such marketing, the Defendants expressly represented to consumers, including Plaintiff, that Post-it Notes is an invention by 3M and Arthur Fry in 1974. (The basis for the Plaintiff's information is from company websites and Wikipedia pages posted on the internet as example attached here as **Exhibit A**)

16. In reliance upon Defendant's representations regarding the claims of inventorship of Press n' Peel and Post-it Notes the sticky repositionable reusable paper notes pads product, Plaintiff Alan "Amron"'s reputation as an American inventor of the first such sticky notes repositionable reusable memo note paper combination product in 1973 has caused him irreparable emotional and financial damage.

17. In reliance upon Defendant's representations and claims regarding the inventorship dates of the Post-it Note product, the answer to not using pins and or scotch tape to post a memo or a note on to a surface without damaging the surface, and being able to reposition it over and over again, Plaintiff Alan Amron's reputation has been irreparably damaged.

5

18. Unknown to the Plaintiff, and upon information and belief the Post-it Note that has become the most used iconic stationery invention combination product on the planet, Defendants Art "Fry" and "3M" continue to claim inventorship when in fact they publically claim to have invented it in 1974 when clearly Plaintiff "Amron" invented and put it into use in 1973, a year prior.

19. Plaintiff Alan "Amron" sustained extreme personal emotional and financial, including pain and suffering, as a direct result of Defendants "3M" and Arthur "Fry"s false and misleading inventorship claims.

20. Specifically, Plaintiff Alan "Amron" repeatedly and frequently suffered severe emotional (loss of creditability - defamation) and financial distress directly relating to the Defendants repeated false and misleading verbal and in print claims of first inventorship.

21. Upon information and belief, such severe emotional pain was/is caused by Defendants false and misleading claims of first inventorship. The basis of such information and belief is that the frequency of the emotional and financial pain substantially diminished when Mr. Amron was credited with inventorship, substantially increased when Mr. Amron again began hearing and reading about Defendants claims of inventorship.

22. In addition, upon information and belief, the damage done to Plaintiff "Amron" by the Defendants "3M' and "Fry" false and misleading claims of first inventorship is permanent. The basis of such information and belief is that "Amron" continues to suffer occasional but severe emotional pain and financial hardships the likes of which he never suffered before he initially began hearing the Defendants "3M' and "Fry" false and misleading first inventorship claims.

6

23.     Moreover, upon information and belief, government authorities have documented the fact that Post-it Notes produced by "3M" and Arthur "Fry" in 1977 was, based on company press and spokespersons inventorship releases that it was invented first by Arthur "Fry" in 1974 publically concealed it until 1977. Plaintiff who actually invented it and put it into use in 1973 was in fact severely damaged by this. **(see Exhibits B-I attached)**

## AS AND FOR A FIRST CAUSE OF ACTION
### (Negligence)

24.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 23 above, with the same force and effect as if set forth in full herein.

25.     Defendants "3M' and "Fry" had a duty to exercise reasonable care and diligence in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Post-it Notes into the stream of commerce, including a duty to assure that the inventorship of the product would not cause others to suffer unreasonable damages.

26.     Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Post-it Notes into interstate commerce in that Defendants knew or should have known that Post-it Notes product sticky notes repositionable reusable paper memo notes combination pads was created and invented by the Plaintiff in 1973, (see **Exhibit C** attached and citing U.S. Federal case CV-97-7281 AMRON vs 3M in the Eastern District of New York) including but not limited to severe emotional pain and dire financial effects which injuries are permanent and lasting in nature and mental anguish, including diminished enjoyment of life.

7

27. The negligence of Defendants, its agents, servants and/or employees, included but was not limited to manufacturing and producing Post-it Notes in such a manner as to permit the inventorship of the product to become an issue of contention to Plaintiff and others worldwide.

28. Despite the fact that Defendants knew or should have known that Post-it Notes product combination had been invented by Plaintiff "Amron" in 1973, had caused fraud allegations on the part of the Defendants in not reporting this Amron prior art to the United States Patent office, Defendants continued to market, manufacture, distribute and/or sell Press n' Peel and Post-it Notes to consumers, stating they invented it first by mistake in 1974 in Church, thereby damaging the Plaintiffs good name and reputation who clearly invented it and put it into practice and use in 1973. (See **Exhibit B-I** attached and citing U.S. Federal case CV-97-7281 Amron vs 3M in the Eastern District of New York in **Exhibit C**)

29. (Goliath) Defendants "3M" and "Fry" knew or should have known that (David) Plaintiff "Amron" would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care and diligence, as set forth above.

30. Defendant's negligence was the sole proximate cause of Plaintiffs' injuries which he has suffered and will continue to suffer unless inventorship is corrected in the worlds view.

31. As a result of the foregoing acts and omissions, Plaintiff "Amron" was and is still caused to suffer extreme emotional and financial damages and embarrassment from the false and misleading first inventorship claims of the Press n' Peel and then Post-it Notes combination product by the Defendants "3M' and "Fry", as described above.

32. Defendant's "3M' and Fry" actions were willful, wanton and/or reckless.

8

33. By reason of the foregoing, Plaintiff Alan "Amron" has been damaged and is entitled to recover as against Defendants "3M" and "Fry" jointly and severally in an amount to be proven at trial, but not less than $200 million dollars.

34. By reason of the foregoing, Plaintiff "Amron" is also entitled to an award of punitive damages against Defendants "3M" and "Fry" in an amount to be determined at trial, but not less than $200 million dollars.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Strict Liability – Slander - Defamation)

35. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 34 above, with the same force and effect as if set forth in full herein.

36. At all times herein mentioned, Defendants designed, research, manufactured, tested, advertised, promoted, marketed, sold and distributed Post-it Note is hereinabove described that sticky combination of repositionable reusable paper notes product which was invented by Plaintiff "Amron" in 1973. (see **Exhibit C-I** attached citing U.S. Federal case CV-97-7281 Amron vs 3M in the Eastern District of New York)

37. The Press n' Peel then later Post-it Note was expected to and did reach the usual consumers, handlers, and persons coming into contact with that combination note paper pad and sticky tacky removable adhesive cement product without substantial change in the condition in which it was produced, manufactured, sold, distributed and marketed by Defendants.

38. At those times, Press n' Peel and Post-it Notes combination note paper pad and sticky tacky removable reusable adhesive cement product was in fact invented and put into use by the Plaintiff "Amron" in 1973, when false and misleading claims of first inventorship by the Defendants was clearly stated in 1974 and then concealed from the public until released as Press

n' Peel in 1977, and in particular, it caused emotional and financial damage to the Plaintiff "Amron" herein.

39. The Press n' Peel then Post-it Note sticky combination of repositionable reusable paper notes combination note paper pad and sticky tacky removable reusable adhesive cement product utility design, research, manufactured, tested, advertised, promoted, marketed, sold and distributed by the Defendants was defective in its carrying the invented first by "3M" and Art "Fry" false and misleading claims associated with the product, particularly, but not limited to, the fact that the product was invented a year before by the Plaintiff Amron, as described above.

40. The Press n' Peel and then Post-it Note combination paper and sticky adhesive product utility design, research, manufactured, tested, advertised, promoted, marketed, sold and distributed by the Defendants was defective in that, when it left the hands of Defendants to announce first to invent inventorship in 1974 of the product, when knowing full well the Plaintiff had in fact already invented it one year prior in 1973, as described above.

41. The 1977 Press n' Peel then named in 1980 Post-it Notes utility product designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant also was defective due to inadequate and false misleading claims of its first inventorship in the media and to its customers including the Plaintiff "Amron".

42. Specifically, Defendant knew or should have known of the risks associated with the false and misleading claims of first inventorship, including the risk of the type of injuries suffered by the Plaintiff, but failed to provide adequate information to users or consumers of the products, and continued to improperly advertise, market and/or promote Post-it Notes combination sticky contactless adhesive and note paper products as its maker and inventor generating literally billions of dollars in revenue for the Defendants each and every year.

10

43. By reason of the foregoing, Defendants have become strictly liable, by having slandered and defamed the Plaintiff "Amron" in the representation, manufacturing, marketing, promoting, distribution, and selling of a falsely claimed first invetorship of the iconic utility sticky tacky combination of repositionable reusable paper notes product the world knows as Post-it Notes.

44. Defendant's actions were willful, wanton and/or reckless.

45. By reason of the foregoing, Plaintiff Alan "Amron" has been damaged and is entitled to recover as against Defendants jointly and severally in an amount to be proven at trial, but not less than $200 million dollars.

46. By reason of the foregoing, Plaintiff "Amron" is entitled to an award of punitive damages against the Defendants jointly and severally in an amount to be determined at trial, but not less than $200 million dollars.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Unclean Hands)

47. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 46 above, with the same force and effect as if set forth in full herein.

48. Defendants expressly warranted that Press n' Peel in 1977 and then Post-it Notes in 1980 utility product was invented by "3M" and Arthur "Fry", as described above.

49. Defendants impliedly warranted that Press n' Peel and then Post-it Notes was invented by "3M" and Arthur "Fry", as described above.

50. Defendants breached its express warranty as described above.

51. Defendants breached its implied warranty as described above.

52. By reason of the foregoing, Plaintiff Alan "Amron" has been damaged and is entitled to recover as against Defendants "3M' and "Fry" jointly and severally in an amount to be proven at trial, but not less than $200 million dollars.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Fraudulent Misrepresentation)

53. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 52 above, with the same force and effect as if set forth in full herein.

54. Defendants falsely and fraudulently represented to the public, including Plaintiff, and the United States Patent and Trademark office that Press n' Peel in 1977 and then Post-it Notes in 1980 utility sticky combination of repositionable reusable paper notes product was in fact invented by "3M" and Arthur "Fry" in 1974, when in fact they knew or should have known that Plaintiff "Amron" invented it and put it into use one year prior in 1973. (see **Exhibits A-I** attached and citing U.S. Federal case CV-97-7281 AMRON vs 3M in the Eastern District of New York)

55. The representations made by Defendants "3M' and "Fry" were false, and the Defendants either knew those representations to be false, or made those representations with reckless disregard as to whether the representations were true or not for business and financial gain reasons and to gain an unfair advantage over their competition in the market place.

56. In reliance upon said 1974 first inventorship representations by the Defendants, Plaintiff "Amron" has been severely damaged, thereby sustaining the severe injuries described above.

57. Defendant's actions were willful, wanton and/or reckless.

12

12 of 19

58. By reason of the foregoing, Plaintiff Alan "Amron" has been damaged and is entitled to recover as against Defendants "3m" and "Fry" jointly and severally in an amount to be proven at trial, but not less than $200 million dollars.

59. By reason of the foregoing, Plaintiff "Amron" is also entitled to an award of punitive damages from the Defendants in an amount to be determined at trial, but not less than $200 million dollars.

## PRAYER FOR RELIEF

**WHEREAS,** The Plaintiff "Amron" is the original creator and first inventor of the very first sticky repositionable reusable Memo/Note paper and pad combination, and it's repositionable low tacky tackless adhesive that is self sticking, repositionable, reusable, removable, and having clearly shown here that Plaintiff "Amron"'s conception date as shown in exhibits attached of at least November 29, 1973 (See **Exhibit D attached here**) and put into use publically for this invention (See **Exhibits B-I attached here**), is at least one (1) year prior to the publically admitted to 1974 by accident in Church - then Defendants concealed it from the public - conception date of the Defendants "3M" employee Arthur "Fry". **(See attached Exhibit A)** Plaintiff "Amron" had put into use and in commerce date as clearly officially exhibited here was 1974, which is at least three (3) years prior to the Defendants "3M" and Arthur "Fry" publically admitted to putting Post-it Notes named as Press n' Peel into commerce and use date of 1977. Then the Defendants renamed the very same combination product Post-It Note in 1980. **(See Exhibit A attached here)**

**WHEREFORE,** Plaintiff "Amron" demands judgment against Defendants "3M' and "Fry" both jointly and severally on each of the above referenced claims and causes of action as follows:

13

1. An award of compensatory damages to Plaintiff Alan "Amron" in an amount to be determined at trial, but not less than $200 million dollars;

2. An award of punitive damages to Plaintiff Alan "Amron" in an amount to be determined at trial, but not less than $200 million dollars; and

3. A definitive clear judgment by this Court of Plaintiff "Amron"'s first to invent "inventorship" in this iconic combination stationery industry sticky tacky removable reusable repositionable adhesive and paper notes invention, that completely eliminated the need to use pins, magnets and or tape to post a temporary paper note on a surface. Whatever the name it may be called **Press-On Memo – Press n' Peel and or Post-It Note**; and

4. Such other and further relief as the Court may deem just and proper.

DATED: This 25th day of January 2016

*[signature: Alan Amron]*

**Alan Amron**, Pro se Plaintiff
255 Evernia Street   #622
West Palm Beach, Florida 33401
(305) 343-7480 phone
(347) 402-0194 fax
alanamron@yahoo.com

14

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues triable to a jury.

DATED: This 25th day of January 2016

*[signature]*

Alan Amron, Pro se Plaintiff
255 Evernia Street   #622
West Palm Beach, Florida 33401
(305) 343-7480 phone
(347) 402-0194 fax
alanamron@yahoo.com


I hereby certify that on this day January 25th, 2016, I served the attached documents to the Defendants. A True and Correct Copy of this "COMPLAINT" and "DEMAND FOR TRIAL BY JURY" was served upon Defendants by process service:

**DEFENDANTS:**

**3M Minnesota Mining & Manufacturing Company and
Arthur Fry;**


**3M Company - Office of General Counsel**
P.O. Box 33428
3M Center, Bldg. 220-11e-03
St. Paul, MN 55133
T: 888-364-3577
www.mmm.com

*[signature]*

Alan Amron

15

# PLAINTIFF "AMRON" EXHIBIT LIST

## A-I

**EXHIBIT A**

True and correct copy of the Wikipedia facts published of Defendants 3M and Art Fry Post-it note known history

**EXHIBIT A1**

True and correct copy of the Wikipedia facts published of Plaintiff Alan Amron known history

**EXHIBIT B**

True and correct copy of Press-On Memo and Post-It Note images

**EXHIBIT C**

True and correct copy of 1997 Amron vs 3M case for known facts and exhibits

**EXHIBIT C1**

True and correct copy of 1997 Amron vs 3M case exhibits

**EXHIBIT C2**

True and correct copy of 1997 Amron vs 3M case exhibits continued

**EXHIBIT D**

True and correct copy of Letter November 29, 1973 referencing communication about Amron memo project tacky and tackyless adhesive for his invention.

**EXHIBIT D1**

True and correct copy of Post mark Chicago Illinois envelope post office stamped dated 29 Nov 1973

**EXHIBIT E**

True and correct copy of Michael Solomon, Esq. attorney in 1974, affidavit notarized and signed

**EXHIBIT E1**

True and correct copy of Certificate of PRESS On Memo LTD NY State of corporation dated July 24, 1974

**EXHIBIT E2**

True and correct copy of Certificate of corporation for Press-on memo LTD

**EXHIBIT E3**

True and correct copy of Certificate of corporation for Press-on memo LTD continued

**EXHIBIT E4**

True and correct copy of Certificate of corporation for Press-on memo LTD continued signed by witness

**EXHIBIT E5**

True and correct copy of Mailing receipt for Press-On Memo LTD CT-4 1974 dated New York State Tax form mailed

**EXHIBIT E6**
True and correct copy of Open for business Post Office Box on July 22, 1974 stamped paid by the UNITED STATES POSTAL SERVICE

**EXHIBIT F**
True and correct copy of Original artwork of Insti-Sta concept for Press-On Memo sticky notes and pads in1973

**EXHIBIT F1**
True and correct copy of Original Press-On Memo sheet 1973 Used in 1974 mass mailing

**EXHIBIT F2**
True and correct copy of Original Press-On Memo art1973 Used in 1974 mass mailing

**EXHIBIT F3**
True and correct copy of Original Press-On Memo mass mailing envelope1973 Used for 1974 mass mailing

**EXHIBIT F4**
True and correct copy of Original Press-On Memo art1973 Sales sheet Used in 1974 mass mailing

**EXHIBIT F5**
True and correct copy of Original Press-On Memo spray cans 1974 Used in 1974 sales and to make Press-On Memo pads

**EXHIBIT F6**
True and correct copy of Color labels on sticky spray cans 1973

**EXHIBIT F7**
True and correct copy of Color labels on sticky spray cans 1973

**EXHIBIT F8**
True and correct copy of Color sales Display card for sticky spray cans to sell them in 1974

**EXHIBIT G**
True and correct copy of Investor in Press-On Memo company Jeffrey E. Brown Affidavit original was filed with the Court in 3M case 1997

**EXHIBIT G1**
True and correct copy of Jeffrey Brown Affidavit continued

**EXHIBIT G2**
True and correct copy of Jeffrey Brown Affidavit notarized signature page

**EXHIBIT H**
True and correct copy of Inventor Alan Amron Affidavit from 1997 3M Case Original was filed with the Court

**EXHIBIT H1**
Inventor Alan Amron Affidavit from 1997 3M Case Original was filed with the Court continued

**EXHIBIT H2**
True and correct copy of Inventor Alan Amron Affidavit from 1997 3M Case Original was filed with the Court continued

**EXHIBIT H3**
True and correct copy of Inventor Alan Amron Affidavit from 1997 3M Case Original was filed with the Court continued

**EXHIBIT H4**
True and correct copy of Inventor Alan Amron Affidavit from 1997 3M Case Original was filed with the Court notarized signature page

**EXHIBIT H5**
True and correct copy of Image from the NEWS video coverage of the Press-On Memo and Battery Operated water Gun inventions at INVENTION SHOW IN NYC 1974 were we met with two 3M executives and gave them Press-On Memo and spray sticky cans samples, they gave us their business cards

**Exhibit H6**
True and correct copy of Letter in 1975 from another trade show, to show Press-On Memo this time to the national mail order merchandisers show coming up

**EXHIBIT H7**
True and correct copy of Actual purchase order for Press-On Memo sticky adhesive spray cans for photo stores to sell in 1975

**EXHIBIT H8**
True and correct copy of Another of several invoices for the delivery of Press-On Memo sticky adhesive spray cans that we used to make the actual sticky note pads

**EXHIBIT I**
True and correct copy of Press-On Memo (1974 in use) product and 3M Post-it Note (1981 in use) product comparison Chart