UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO.: 16-80125-civ-80125-JIC/SELTZER

ALAN AMRON, Pro Se,

      Plaintiff,

v.

3M MINNESOTA MINING &
MANUFACTERING COMPANY[1] AND
ARTHUR FRY,

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS
## AND SUPPORTING MEMORANDUM OF LAW

Defendants, 3M COMPANY ("3M") and ARTHUR FRY ("Fry") (collectively, "Defendants"), through counsel, hereby file their Motion to Dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure and Local Rule 7.1. In support, Defendants state as follows:

### Introduction

Plaintiff's Complaint seeks to pose a case that was resolved 18 years ago. This case involves the 3M Post-it® Note,[2] a repositionable note that 3M introduced over three decades ago. The 3M Post-it® Note was developed by a collaboration of 3M scientists Spencer Silver and Art Fry. Plaintiff alleges that he invented his own pad of repositionable notes, which he calls the "Press-on Memo," before 3M invented its own repositionable note. Plaintiff's Complaint seeks a determination that he be credited with inventing the 3M Post-it® Note.

---

[1] Defendant 3M's correct legal name is 3M Company.

[2] "Post-it" is a registered trademark owned by 3M and used in association with a family of repositionable products. *See* Complaint, Ex. C-20, 21. Repositionable notes and other related products sold by non-parties are sold under other trademarks.

Even assuming Plaintiff's allegations are true, which they are not, and even if he had a viable legal theory based on those purported facts, which he does not, his case is barred because he already made the same allegations in a 1997 federal court lawsuit against 3M. Plaintiff settled that lawsuit with 3M in 1998 and, when doing so, executed a release and filed a notice of voluntary dismissal with prejudice. Plaintiff's Complaint should be dismissed with prejudice because he released the claims in this case by the settlement agreement he signed in 1998; because his filing of a notice of voluntary dismissal of the 1997 case, with prejudice, bars his claims here based on res judicata; and because his claims are time-barred. Regardless, even if Plaintiff were to somehow overcome all of those fatal defenses, this case should be dismissed because it states no viable cause of action.

Plaintiff's Complaint here only tells "half the story." On the one hand, he acknowledges that he already filed a lawsuit against 3M in 1997 and attaches a copy of the 1997 Complaint in which he claimed first inventorship of the 3M Post-it® Note and sought nearly identical relief as is claimed in this case. But Plaintiff conveniently leaves out of this Complaint the critical second half of the story. That is, Plaintiff leaves out the fact that he and 3M <u>settled</u> the 1997 case by executing a settlement agreement that <u>released</u> 3M and its employees, and that he filed a <u>voluntary dismissal with prejudice</u> of his claims in 1998. The "second half of the story"— the 1998 settlement agreement and voluntary dismissal with prejudice, are attached hereto as **Exhibits A** and **B**, respectively, and require dismissal of this case with prejudice based on release, res judicata, and the statute of limitations. As explained below, this Court can consider these two documents in a motion to dismiss because they are <u>central</u> to Plaintiff's Complaint and are not challengeable.

Even if Plaintiff's claims are not barred on their face by release, res judicata, and the statute of limitations, the Complaint should nevertheless be dismissed because the allegations, taken as true solely for purposes of this motion to dismiss, demonstrate that Plaintiff cannot state a cause of action.  Plaintiff merely alleges that he invented a repositionable note he calls "Press-on Memo," which he claims to have invented before 3M invented its Post-it® Note.  Even assuming *arguendo* that the assertion is true, such fact does not give rise to any cause of action. Plaintiff does not claim that he has a patent on the repositionable note, he does not assert that 3M's Post-it® Note violates some trademark right he owns, nor does he allege that 3M in any way prevented him from selling his Press-on Memo product.  Plaintiff's Complaint does not and cannot establish any recognizable claim based on these facts.  Plaintiff's failure to state a cause of action after more than 30 years of sales of 3M's Post-it® Note cannot be remedied by amendment and this Action should be dismissed with prejudice.

### Motion To Dismiss

Plaintiff's Complaint in this case must be dismissed for failure to state a cause of action for the following reasons:

1.     Plaintiff's claims are barred by the doctrine of release because Plaintiff executed a settlement agreement in January 1998 where he agreed to:

> release and forever discharge 3M,  its . . . agents . . . employees . . .  and each of them from any and all claims, demands, obligations, debts, damages, agreements, promises, or causes of action of every nature, kind and description whatsoever, in law or in equity, whether known or unknown, and whether suspected or unsuspected that AMRON ever had, now has, or hereafter can, shall or may have against 3M arising out of, directly or indirectly, or related in any way to the subject matter of the [1997 Complaint].

Plaintiff's current claims arise directly out of the same subject matter of the 1997 Complaint and are long since released.

2.      Moreover, Plaintiff's Complaint demonstrates, on its face, that the claims are barred by res judicata and are time-barred.  Specifically, the doctrine of res judicata bars Plaintiff from re-filing any claims that were or could have been alleged in the 1997 Case, which was dismissed with prejudice.  The Complaint in this case makes clear that all the allegations arise out of the same core facts as were alleged in the 1997 Complaint, and are thus barred by res judicata.  Second, the 1997 Complaint makes clear that Plaintiff knew or should have known by 1997 of the facts giving rise to all claims alleged in this case, 19 years ago, and thus they are time barred under Florida's statutes of limitation, laches, and equitable estoppel.

3.      Finally, even if Plaintiff's purported claims were not barred by release, res judicata, or time barred, they fail to state a cause of action.  Specifically, even assuming the factual allegations set forth in the Complaint to be true, for purposes of this motion only, Plaintiff's Complaint fails to allege any legally recognizable claim and the case should be dismissed with prejudice.

## MEMORANDUM OF LAW

In his Complaint in this case, Plaintiff repeatedly cites to a lawsuit he filed in 1997 against 3M, Case No. CV-97-7281, *Amron vs. 3M*, in the Eastern District of New York ("1997 Complaint" or "1997 Case"), and he attaches a copy of the 1997 Complaint to the instant Complaint.  (*See e.g.* Compl. ¶¶ 2, 26, 28, 36, 54; Ex. C, G and H).

In paragraph 2 of his Complaint, Plaintiff refers to the famous Shakespeare quote: "a rose by any other name would smell as sweet."  That phrase certainly does apply to this case.  That is, no matter that Plaintiff gives names to his claims in this case that are different from those in the 1997 Case, which was settled and dismissed with prejudice in 1998, they are in fact the same.

The instant Complaint is the epitome of a rose called by another name—it is the 1997 Case reincarnated.

**The Complaint In This Case**

In his Complaint, Plaintiff claims that he was the "first to invent" the "combination sticky note paper and pads" in 1973, and that he introduced same into commerce under the product name "Press-on Memo" in 1974.  (Compl. ¶ 2).  Plaintiff further alleges that 3M has publicly claimed (citing Wikipedia no less) that it invented its version of a repositionable note in 1974, and that it introduced its version of repositionable notes into commerce in 1977 under the product name "Press n' Peel," and later "Post-it® Note" in 1980. (Compl. ¶ 2, and its Ex. A). Plaintiff claims that he "is the clear inventor and should have proper inventorship" (Compl. ¶ 2), and that he has been damaged by Defendants' "false and misleading claims of inventorship" (Compl. ¶ 21) causing, *inter alia*, personal, emotional, and financial distress, loss of credibility and monetary damages (Compl. ¶¶ 19-20).  In his prayer for relief, Plaintiff seeks "[a] definitive clear judgment by this Court of Plaintiff['s] . . . first to invent 'inventorship' . . . . [w]hatever the name it may be called **Press-On Memo – Press n' Peel** and or **Post-it® Note**."  (Compl. p. 14).

Plaintiff alleges here that this action was "brought for the purpose of determining an actual controversy of first to invent inventorship . . . under the United States Patent and Trademark office patent rights and copyright rules . . . ." (Compl. ¶ 1).  Plaintiff further alleges that "[t]he issue in this litigation is 'Inventorship.'" (Compl. ¶2).

Plaintiff's Complaint alleges that 3M and its employee, Fry, have publicly and falsely claimed "first inventorship" of the Post-it® Note, and that Plaintiff first invented the repositionable note in 1973, causing Plaintiff to suffer emotional pain and financial hardship damages. *See* Complaint ¶¶ 16-23.  Plaintiff attempts to state four causes of action as follows:

1. <u>Negligence</u> – 3M had a duty to assure that the inventorship of the Post-it® Note would not cause others to suffer damages, and that 3M breached that duty by failing to research and determine that Plaintiff invented a repositionable note in 1973, and by failing to report Plaintiff's invention to the US Patent and Trademark Office ("USPTO").  Complaint ¶¶ 25-28.

2. <u>Strict Liability – Slander – Defamation</u> – 3M made false and misleading claims of its first inventorship in 1974, 1977 and 1980, through its Press n' Peel and Post-it® Note products, thereby slandering and defaming Plaintiff, who is the true first inventor of the repositionable note.  Complaint ¶¶ 36-43.

3. <u>Unclean Hands / Breach of Warranty</u> – 3M and Fry claim that they invented the Press n' Peel and Post-it® Note products, which claims constitute breaches of warranty because Plaintiff is entitled to first inventorship.  Complaint ¶¶ 48-52.

4. <u>Fraudulent Misrepresentation</u> – Defendants falsely represented to the public, Plaintiff and the USPTO, that Press n' Peel and Post-it® Notes were invented by 3M and Fry when they knew or should have known that Plaintiff first invented the repositionable note product in 1973 and introduced it into commerce in 1974.  Complaint ¶¶ 54-55.

**<u>The 1997 Complaint</u>**

Plaintiff's claims in the 1997 Complaint are nearly identical to the claims here.  In the 1997 Complaint, Plaintiff alleged:

- he created, developed and offered for sale, "Press-on Memo," a "self stick removable, repositionable and removable notes" product in 1974. (Complaint, Ex. C, p.4, 12 of 75, ¶¶ 5, 19).

- 3M has falsely represented to the USPTO in multiple patent applications, that the reusable self stick removable, repositionable and removable notes and its special adhesive product concept was first conceived by 3M through individuals other than Plaintiff, including Arthur Fry.  (Complaint, Ex. C, p.4-11 of 75, ¶¶ 6-17).

- 3M had an obligation to disclose Plaintiff's earlier invention of the "Press-on Memo" to the USPTO and the public. (Complaint, Ex. C, p.13 of 75, ¶ 22).

- 3M came into possession of Plaintiff's "Press-on Memo" product and illegally utilized it to manufacture what is now known as 3M's Post-it® Note product. (Complaint, Ex. C, p.14-15 of 75, ¶¶ 24-25).

The 1997 Complaint alleged, *inter alia*, that "3M had an obligation to disclose, under the

United States Patent and Trademark Office Rule 56 . . . the Plaintiffs earlier conception date" in

1973, and that "Plaintiff . . . has suffered irrevocable financial injury due to the . . . false patent filings of the Defendant." (Compl. Ex. C ¶¶ 22, 37).

Plaintiff then attempted to allege claims for Declaratory Judgment to invalidate 3M's patents for its Post-it® Note products; Unclean Hands because of 3M's false patent filings; and antitrust violations for improper applications and receipt of various patents for the Post-it® Note products.  In his prayer for relief, Plaintiff sought, *inter alia*, a declaration of invalidation of certain 3M assigned patents and trademark registrations.  (Compl. Ex. C).

## Standard For A Motion To Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  A court may dismiss a complaint on a dispositive issue of law. *See Hernandez v. Bank*, 2015 WL 9302827, at *3 (S.D. Fla. Dec. 21, 2015).  Moreover, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal," *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006), *quoting Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1187 (11th Cir. 2002).

## A.  Plaintiff's 1997 Lawsuit Requires Dismissal With Prejudice

The 1997 Complaint, which included allegations against 3M nearly identical to those filed in this case, was attached to the Complaint here.  What Plaintiff did not file in this case is a copy of the Notice of Voluntary Dismissal With Prejudice, filed in the 1997 Case.  A true and correct copy of the 1997 Voluntary Dismissal is attached hereto as **Exhibit B**.  Plaintiff also failed to attach a copy of the settlement agreement he and 3M signed in January 1998, where Plaintiff provided 3M with a full release of all claims in the 1997 Case.  A true and correct copy

of the 1998 settlement agreement is attached hereto as **Exhibit A**. ("Settlement Agreement"). The settlement and voluntary dismissal of the 1997 Case bar all of Plaintiff's claims here.

    1.  **Dismissal Is Required Because Plaintiff Released His Claims**

Plaintiff's claims must be dismissed because the Settlement Agreement he signed to resolve the 1997 Case included a release that covers all the claims in this case.

Although generally a court is constrained to look only to the allegations contained in a complaint to decide if it states a viable claim, the court may "consider a document attached to a motion to dismiss if it is 'central to the plaintiff's claim,' and its authenticity is not challenged." *Sherrod v. School Bd. Of Palm Beach County,* 550 Fed. Appx. 809, 811 (11th Cir. 2013). In *Sherrod*, a former employee filed a complaint against his former employer, a school board, alleging racial discrimination after he had previously settled the claim with the school board and executed a release. The school board moved to dismiss the complaint for failure to state a claim, and attached a copy of the signed settlement agreement between the parties. The Eleventh Circuit affirmed dismissal of the complaint for failure to state a cause of action, relying on the settlement agreement that was attached only to the motion to dismiss and affirmed the trial court's conclusion that the claims were released by settlement agreement.

Here, Plaintiff made the 1997 Case a central part of his case here, thus making the Settlement Agreement central to a determination as to whether Plaintiff has a claim. The Settlement Agreement can thus be considered on a motion to dismiss in this case.

In paragraph 3 of the Settlement Agreement, Plaintiff expressly released 3M and its representatives as follows:

> AMRON shall and does hereby release and forever discharge 3M, its . . . agents . . . employees . . . and each of them from any and all claims, demands, obligations, debts, damages, agreements, promises, or causes of action of every nature, kind and description whatsoever, in law or in equity, whether known or unknown, and whether suspected or

unsuspected that AMRON **ever had, now has, or hereafter can, shall or may have against 3M arising out of, directly or indirectly, or related in any way to the subject matter of the Action** (emphasis added).

The claims alleged in the instant Complaint absolutely arise out of the "subject matter" of the 1997 Complaint.  Both cases have as its center, the issue of "first inventorship" of the 3M Post-it® Note and both allege that 3M falsely claimed to the USPTO and others that it is the first inventor of the Post-it® Note when Plaintiff is the first inventor of the repositionable note.  The claims against Defendants in this case thus are "related" to the "subject matter" of the 1997 Case and are thus released, entitling Defendants to a dismissal.

Moreover, Defendant Fry is entitled to a dismissal based on the Settlement Agreement even though he was not a party to the 1997 Case.  According to paragraph 6 of the Complaint, Defendant Fry "is/was an employee of Defendant '3M'."  In the Settlement Agreement, Plaintiff expressly released not only 3M, but also 3M's "employees" and "agents."  According to the allegations of the Complaint, Defendant Fry was an employee of 3M and therefore he is entitled to the benefits of the release in the Settlement Agreement.

Under Florida law, "[O]nce a party accepts the proceeds and benefits of a contract, that party is estopped from renouncing the burdens the contract places on him." *Sherrod*, 550 Fed. Appx. at 812 (quoting *Fineberg v. Kline*, 542 So.2d 1002, 1004 (Fla. 3d DCA 1989))[3].  In 1998 Plaintiff received the benefits of the Settlement Agreement and he is now "estopped from renouncing his part of the bargain – forgoing further litigation" involving inventorship of the

---

[3]  The Settlement Agreement provides that it shall be construed under Minnesota law.  Whether Minnesota or Florida law applies to the release, the result is the same.  Minnesota, like Florida, interprets releases using the rules of contract construction, and under Minnesota law, a general release of all claims, known and unknown, will be enforced by the court if the intent is clearly expressed. *See Curtis v. Altria Group, Inc.*, 813 N.W.2d 891, 901 (Minn. 2012).

Post-it® Note.  *See Sherrod*, 550 Fed. Appx. at 812.  Accordingly, Plaintiff's claims against 3M

and Fry are both released and a dismissal with prejudice is required.

    **2.**  **Plaintiff's Claims Are Barred by Res Judicata**

      If this Court determines that the Complaint in this case is not barred by the 1998 release,

it should be dismissed as barred by res judicata.  Res judicata bars re-litigation of claims that

were or could have been alleged in a prior lawsuit between the parties.  *See Krauser v. Evollution

IP Holdings, Inc.*, 975 F. Supp. 2d 1247, 1252 (S.D. Fla. 2013); *In re Piper Aircraft,* 244 F.3d

1289, 1296 (11th Cir. 2001).

      In both this case and in the 1997 Case, Plaintiff alleges that 3M falsely claims to be the

first inventor of the repositionable note that became the Post-it® Note, and that such false claims

were made to the USPTO.  Plaintiff's 1997 Case was dismissed on January 26, 1998 <u>with

prejudice</u>.  *See* **Exhibit B**.[4]  Having been dismissed "with prejudice," Plaintiff is barred from

ever again alleging any claims arising out of 3M's assertions for first inventorship of the Post-

---

[4] "[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto.  However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."  *Schoenfisch v. Gen. Elec. Co.*, No. 8:00-CV-337-T-23B, 2000 WL 34248412, at *1 (M.D. Fla. July 14, 2000) (quoting *Brooks v. Blue Cross & Blue Shield of Florida,* 116 F.3d 1364 (11th Cir.1997)).

Accordingly, "a district court may consider a document attached to a motion to dismiss if it is (1) central to the party's claim, and (2) its authenticity is not challenged."  *Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 2016 WL 146612, at *2 (S.D. Fla. Jan. 12, 2016). Furthermore, "[p]leadings, orders, and other documents from a prior action are not subject to reasonable dispute because they [a]re capable of accurate and ready determination by resort to sources whose accuracy [cannot] reasonably be questioned." (citations omitted) *Frame v. United States*, 2010 WL 5951969, at *4 (M.D. Fla. Dec. 30, 2010) *report and recommendation adopted*, 2011 WL 861179 (M.D. Fla. Mar. 9, 2011) *aff'd,* 445 F. App'x 273 (11th Cir. 2011).  "Thus, taking judicial notice of such documents in deciding a Rule 12(b)(6) motion to dismiss is proper."  *Id.*

it® Note product.  *See Astron Ind. Assoc. v. Chrysler Motors Corp.,* 405 F.2d 958, 960 (5th Cir.1968) (dismissal with prejudice constitutes a final judgment on the merits).[5]

Further, because "Fry is/was an employee of Defendant 3M" (Compl., ¶6), he was in privity with his employer, and the claims against Fry are also barred by res judicata even though he was not a party to the 1997 Case.  Specifically, res judicata is available to persons who were actual parties to a prior case as well as those who were in privity with any parties to the prior case.  *See Griswold v. Cty. of Hillsborough*, 598 F.3d 1289, 1292-93 (11th Cir. 2010).  Fry is entitled to claim preclusion because he is in privity with his employer, 3M, who was a defendant in the prior case and who was dismissed with prejudice.  *Id.  See also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (res judicata applies to non-parties where there is a "substantive legal relationship" between the nonparty and a party to the judgment; where a nonparty was adequately represented in the prior litigation by someone with the same interests; and where a nonparty is the proxy or agent of a party to the prior litigation).

Because Plaintiff's claims in the 1997 Case were dismissed with prejudice, and because the allegations in this case arise out of the same transaction or occurrence as was the basis for the 1997 Complaint, this case must be dismissed with prejudice as barred by res judicata.

### 3.  Plaintiff's Claims Are Time-Barred - Statute of Limitations, Laches And Estoppel

Even if Plaintiff's claims are not barred by release or res judicata, they are all barred by the statute of limitations.  *See Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1316-17 (M.D. Fla. 2013) (although the statute of limitations is normally an affirmative defense, the

---

[5] *But see Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004) ("Where the parties consent to such a dismissal based on a settlement agreement, however," the effect of *res judicata* is controlled by "the matters specified in the settlement agreement, rather than the original complaint.").  Here, as stated above, the release contained in the Settlement Agreement bars Plaintiff's claims.

statute may be raised by pre-answer motion where the defense appears on the face of the complaint to bar the purported action). The allegations of the 1997 Complaint, which are incorporated into the Complaint in this case, make clear that Plaintiff knew as of 1997 that 3M was making public statements, to the USPTO and through other public communications, that 3M, through Fry and other employees, were claiming first inventorship of the Post-it® Note product.  (Compl. Ex. C).  As such, Plaintiff was required to file any claims arising out of such facts within the applicable statute of limitations.   "When federal jurisdiction is founded upon diversity of citizenship, the law of the forum state will provide the appropriate statute of limitations." *Lesti*, 960 F. Supp. 2d at 1320.  The applicable statutes are as follows:

1. <u>Negligence</u>: Florida has a **four-year** statute of limitations for actions founded on negligence under Fla. Stat. § 95.11(3)(a).

2. <u>Strict Liability / Defamation</u>:  Florida has a **four-year** statute of limitations for actions founded on strict product liability under Fla. Stat. § 95.11(3)(e). Alternatively, to the extent Plaintiff has mislabeled his claim, Florida has a **two-year** statute of limitations for defamation under Fla. Stat. § 95.11(4)(g).

3. <u>Unclean Hands / Breach of Warranty</u>: The doctrine of unclean hands is an *affirmative defense*, and not a cause of action upon which relief can be granted.  Such claim should be dismissed, or, to the extent that it states a cause of action, converted to a claim for inequitable conduct which carries a **four-year** statute of limitations under § 95.11(3)(j) or (k). Alternatively, "Florida law provides a **five year** statute of limitations for breach of express warranty claims."  *Mayor's Jewelers, Inc. v. Meyrowitz*, No. 12-80055-CIV, 2012 WL 2344609, at *3 (S.D. Fla. June 20, 2012) (citing Fla Stat. § 95.11(2)(b)).

4. <u>Fraudulent Misrepresentation</u>:  Florida has a **four-year** statute of limitations for fraudulent-misrepresentation claims under Fla. Stat. § 95.11(3)(j).  *See also Roberta L. Marcus, Inc. v. New Cingular Wireless PCS, LLC*, No. 12-20744-CIV, 2013 WL 5554142, at *5 (S.D. Fla. Sept. 3, 2013).

"Florida law will determine when the applicable statute of limitations begins to run, but federal law will provide the legal standard to determine if defendants are entitled to dismissal." *Lesti*, 960 F. Supp. at 1320.  "Under Florida law, the statute of limitations begins to run when the

cause of action accrues.  Generally, a cause of action accrues, and the statute of limitations therefore begins to run, on the date the last element constituting the cause of action occurs." *Id.* (citations omitted).  "An exception is made for claims of fraud . . ., for which the accrual is delayed until the plaintiff either knows or should know [of the fraud]." *Id.* (citation omitted). "The statute of limitations for a defamation claim . . . begins to run on the date of the publication." *In re Creative Loafing, Inc.*, 2010 WL 1408425, at *2-3 (M.D. Fla.  2010) (citing, *inter alia*, Fla. Stat. §§ 95.031, 770.07).  "Florida ha[s] rejected the argument that the statute of limitations for defamation claims should not begin to run until the defamation is discovered." *Id.*

Defendants' allegedly "false and misleading claims of first inventorship" (Compl. ¶ 21) are the primary focus of all four counts in the Complaint.  Plaintiff fails to allege with specificity when these claims were made or by whom.  However, the 1997 Complaint reveals, undisputedly, that Plaintiff had **actual knowledge** of Defendants' claims of inventorship made to the USPTO and to the public at large since **at least** 1997.    In fact, the 1997 Complaint goes so far as to allege that "3M has, ***for the past several years***, illegally and under false pretenses, claimed conception."  (emphasis added) (Compl. Ex. C at pg. 16).  The statute of limitations on all claims thus began to run, at the very latest, when Plaintiff filed his 1997 Complaint.  The two-year statute of limitations for defamation would have expired by 1999; four-year statute of limitations for negligence, inequitable conduct and fraudulent misrepresentation would have expired by 2001; and the five-year statute of limitations for breach of warranty would have expired by 2002—approximately 14 years ago.  All claims are thus barred by the statutes of limitation.

To the extent Plaintiff's claims are somehow not barred by the statutes of limitation, they are most certainly barred by the doctrine of laches and the related equitable estoppel doctrine. Both concepts are recognized as defenses that may be asserted against a claim of inventorship.

*Pannu v. Iolab Corp.*, 96 F. Supp. 2d 1359, 1368 (S.D. Fla. 2000). Dismissal of a claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay. *Id.* Equitable estoppel may be applied to bar a claim where the following three elements are found: (1) the party making the claim has, through misleading conduct, led the non-claiming party to reasonably infer that the claimant does not intend to enforce his claim—"conduct" may include specific statements, action, inaction, or silence where there is a duty to speak; (2) the non-claiming party relies upon that conduct; (3) due to his reliance, the non-claiming party will be materially prejudiced if the claiming party is allowed to proceed with his claim. *Id.*

Here, the doctrine of laches applies where there is unreasonable and unexcused delay in Plaintiff reawakening his claims nearly *40 years* after the alleged date of inventorship (Compl. ¶ 2) and nearly *20 years* after the 1997 action where these same claims and allegations were dismissed with prejudice. (Compl., Ex. C; *see also* Voluntary Dismissal with Prejudice, attached hereto as **Exhibit B**). Defendants have been materially prejudiced as a result of Plaintiff's unreasonable delay and having to re-litigate these same claims. Furthermore, Plaintiff is estopped from bringing these claims where, through his misleading conduct of voluntarily dismissing all claims in the 1997 Complaint with prejudice, Plaintiff led Defendants to reasonably infer that these claims had been affirmatively disposed of and precluded, and the Defendants reasonably relied on Plaintiff's conduct to their detriment.

### B. Failure To State A Cause of Action

Even if Plaintiff's claims are not barred by release, res judicata or time barred, they should be dismissed for failure to state a cause of action. Assuming the allegations as true, only for the purposes of this motion, Plaintiff claims that he invented a repositionable note in 1973, before 3M invented its repositionable note, now known as the Post-it® Note. But Plaintiff fails

to allege any intellectual property or other right to preclude 3M from selling or promoting its Post-it® Note products.  Plaintiff does not claim ownership of a patent for repositionable notes, and does not allege that 3M violated any trademark rights he owns.  Finally, he does not and cannot allege that 3M prohibited him from selling his repositionable note.  Instead, Plaintiff attempts to articulate state law tort claims, but does not and cannot allege any legal basis to prevent 3M from selling a product Plaintiff admits 3M invented. No such cause of action can exist on the facts of this case.

## Count I – Negligence

In his negligence claim, Plaintiff asserts that Defendants had a duty to assure that the inventorship of the product would not cause others to suffer damages, and that Defendants breached that duty by failing to research and determine that Plaintiff invented the product in 1973, and by failing to report Plaintiff's invention to the USPTO.  *See* Complaint ¶¶ 25-28.  In his strained attempt to allege all of the elements of a negligence cause of action, Plaintiff alleges a nonexistent duty of care.  Defendants' purported "duty" to disclose Plaintiff's invention to the USPTO does *not* give rise to a private cause of action or liability to a third party such as the Plaintiff.  *See e.g. Sioux Biochemical, Inc. v. Cargill, Inc.*, 410 F. Supp. 2d 785 (N.D. Iowa 2005) (former licensee's alleged ex parte statement to USPTO that it was inventor of process it sought to have patented was not actionable by third party claiming inventorship).  At best, Plaintiff's remedy is to seek correction of inventorship and attack the validity of any patent issued based on Defendants' *allegedly* material misrepresentations or omissions—which course of action Plaintiff has already pursued in the 1997 Case, which claim was settled and dismissed with prejudice.  Accordingly, where there is no individual duty owed by Defendants to Plaintiff with

respect to representations made to the USPTO, Plaintiff's negligence count fails to state a cause of action and must be dismissed.

## Count II – Strict Liability – Slander – Defamation

Count II purports to track the elements of a cause of action for strict products liability, but it also attempts to include the elements of a cause of action for defamation.  Because Plaintiff clearly is not attempting a products liability claim, Defendants analyze this as an attempted defamation count.  For his defamation count, Plaintiff alleges misrepresentation of inventorship to the USPTO and the general public.  Plaintiff alleges that he invented the combination of repositionable reusable paper notes product in 1973, and that 3M made false and misleading claims of first inventorship in 1974, 1977 and 1980, through its Press n' Peel and Post-it® Note products, thereby slandering and defaming Plaintiff, who is the true first inventor of the repositionable note.  *See* Complaint ¶¶ 36-43, 54.

"The elements of a defamation claim are: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the statement caused injury to [the] plaintiff."  *Border Collie Rescue, Inc. v. Ryan,* 418 F.Supp.2d 1330, 1348 (M.D.Fla.2006).

Here, the alleged "publications" are unidentified representations of 3M's inventorship made by Defendants to the USPTO and to the public at large, and failure to recognize Plaintiff as the inventor.  In essence, the Plaintiff is claiming *defamation by omission*.  Rather than alleging that Defendants made direct defamatory statements about the Plaintiff such as, "Alan Amron did *not* invent a repositionable note product," Plaintiff instead alleges that the Defendants made indirect defamatory statements about the Plaintiff by <u>failing</u> to mention the Plaintiff.  *See* Complaint ¶¶ 36-43, 54.  Such allegations fail to state a cause of action for defamation.

To be actionable, the allegedly defamatory statement must be false, malicious and made **about the plaintiff**. *See e.g. Border Collie Rescue, Inc. v. Ryan,* 418 F.Supp.2d at 1348 and *In re Nofziger*, 361 B.R. 236, 245 (Bankr. M.D. Fla. 2006). Here, Plaintiff alleges <u>no</u> defamatory statement made by Defendants **about the Plaintiff**. Undersigned counsel has not located any authority that recognizes defamation by "omission"—likely because one cannot be defamed by publication of a statement in which they are not named nor associated. The allegedly defamatory statements not about Plaintiff fail to support a cause of action for defamation.

In addition, this count makes no attribution of the statements made by 3M versus any statements made by Fry, nor when they were made or to whom. This deficiency alone requires dismissal of Plaintiff's claim. "To assert a viable claim for slander the Plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred. Absent sufficient allegations, a claim for slander is properly dismissed for failure to state a cause of action." *Morrison v. Morgan Stanley Properties*, 2007 WL 2316495, at *9 (S.D. Fla. Aug. 9, 2007); *Callaway v. Hornbake*, 2012 WL 333769, at *6 (M.D. Fla. Feb. 1, 2012) (libel per se and defamation). Furthermore, where none of the alleged statements in the Complaint is directly attributed to Fry, this Count II for defamation must be dismissed with respect to Fry. *See Jackson v. North Broward County Hospital District,* 766 So.2d 256, 257 (Fla. 4th DCA 2000) (A plaintiff must "link a particular remark to a particular defendant," and "specifically identify the persons to whom the allegedly defamatory comments were made.").

## Count III – Unclean Hands / Breach of Warranty

In Count III, titled "unclean hands," Plaintiff attempts to plead a nonexistent cause of action for unclean hands while setting forth allegations within the count appearing to relate to

breach of warranty.  Specifically, Plaintiff claims that Defendants warranted that they were the inventors of Press n' Peel and Post-it® Notes, which claims constitute breaches of warranty because Plaintiff is entitled to first inventorship.  *See* Complaint ¶¶ 47-52.  Plaintiff fails to state claims for either unclean hands or breach of warranty.

First, this Court should dismiss Count III because the doctrine of "unclean hands" is an *affirmative defense*, and is not a cause of action upon which relief can be granted.  The doctrine of "unclean hands" applies as a defense against a plaintiff seeking equitable relief who "has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F. 3d 160, 174 (3d Cir. 2001).  It is asserted by a defendant against a plaintiff when a plaintiff's wrongdoing is directly related to the claim against which it is asserted, and the defendant is injured by the plaintiff's wrongful conduct. *Calloway v. Partners Nat'l Health Plans*, 986 F. 2d 446, 450-51 (11th Cir. 1993); *Regions Bank v. Old Jupiter, LLC*, 2010 WL 5148467, at *5 (S.D. Fla. Dec. 13, 2010) aff'd, 449 F.App'x (11th Cir. 2011); *See also Merrill v. Dunn*, 191 F. Supp. 2d 1346, 1355 (M. D. Fla. 2002).  Accordingly, because the doctrine of "unclean hands" is not a cause of action, Count III fails to state a plausible claim must be dismissed.

Alternatively, if Count III is a purported claim for breach of warranty it is inapplicable under the instant facts.  A claim for breach of warranty is a remedy generally available to a buyer based on breach of warranty expressly made in connection with a particular transaction.  To prove a breach of warranty claim under Florida law, a plaintiff must show: (1) facts in respect to the sale of the goods; (2) identification of the type of warranty created; (3) facts in respect to the creation of that particular type of warranty; (4) facts of the breach of warranty; (5) notice to seller of breach; and (6) injuries sustained by the buyer as a result of the breach of warranty.

*Potiker v. Gasiunasen Gallery*, 2010 WL 2949943, at *2 (S.D. Fla. July 26, 2010) (citing *Dunham–Bush v. Thermo–Air Service, Inc.,* 351 So.2d 351, 353 (Fla. 4th DCA 1977)).  Plaintiff has failed to allege any of the required facts and appears to misunderstand the nature of a breach of warranty claim.   Plaintiff has not alleged that he purchased *from* Defendants, or that Defendants sold *to* him, any goods carrying a warranty of any kind.  Rather, Plaintiff suggests that he was injured by the warranty of inventorship that Defendants allegedly made to the USPTO and to the public.  Not only has Plaintiff failed to plead the elements of a cause of action for breach of warranty, he us unable to do so because it is well settled that a duty or warranty cannot be claimed to be owed to a third party who as an outsider to the transaction and to whom the warranty was never made.  Accordingly, Count III must be dismissed.

### Count IV – Fraudulent Misrepresentation

Plaintiff's count for fraudulent misrepresentation also fails to state a cause of action. Plaintiff again alleges misrepresentation of inventorship to the public, Plaintiff and the USPTO. *See* Complaint ¶¶ 54-55.  Under Florida law, the elements of a cause of action for fraudulent misrepresentation are: "(1) false statement of material fact or suppression of truth by the defendant; (2) the defendant knew or should have known the statement was false, or made the statement without knowledge as to truth or falsity; (3) the defendant intended the false statement or omission to induce the plaintiff's reliance; and (4) the plaintiff justifiably relied to his detriment."  *Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1122-23 (M.D. Fla. 2009).

To be actionable, the fraudulent misrepresentation must induce the Plaintiff to act to his detriment in reliance thereon.  In the instant case, Plaintiff cannot have "justifiably relied" on Defendants' statements of inventorship if, all along, Plaintiff knew that he was the true inventor. The Complaint does not make—nor can it make—any allegation of reasonable or justifiable

reliance *by the Plaintiff*.   It is irrelevant whether the public or the USPTO relied on the statements for purposes of a cause of action for fraudulent misrepresentation.   Rather, it must be "the [P]laintiff [who] justifiably relied to his detriment."   *See e.g. Sioux Biochemical, Inc. v. Cargill, Inc.*, 410 F. Supp. 2d 785 (N.D. Iowa 2005) (inventor's allegation that patent applicant had falsely claimed inventorship failed to state claim for fraudulent misrepresentation; applicant's *ex parte* statement to USPTO could not give rise to liability to third party; and inventor did not rely on any misrepresentation as to inventorship that had been made to it).

Furthermore, Plaintiff's broad, general allegations that misrepresentations of inventorship were made by Defendants to the public, the Plaintiff and the USPTO are insufficient to satisfy the particularity requirements of Rule 9(b).   Pursuant to Rule 9(b), fraud must be plead with particularity and "requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission."   *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).   Here, Plaintiff fails to specify the who, what, when, where, and how of the material misrepresentations or omissions, as required by Rule 9(b).   The Plaintiff also fails to include sufficient allegations of underlying facts from which one may reasonably infer that there was both: (1) knowledge of the withheld material information or falsity of the material misrepresentation and (2) specific intent to deceive the Plaintiff.

Accordingly the allegations in the Complaint fail to state a cause of action for fraudulent misrepresentation and are in fact incapable of being amended to state such a claim.

## <u>CONCLUSION</u>

Defendants, 3M Company and Arthur Fry, respectfully request that the Court dismiss this case with prejudice, and for such further relief as is just and proper.

DATED: February 16, 2016.

By: /s/ Mark A. Romance
    MARK. A ROMANCE
    Florida Bar No. 021520
    E-mail: mromance@richmangreer.com
    GEORGIA A. THOMPSON
    Florida Bar No. 100181
    E-mail: gthompson@richmangreer.com
    **RICHMAN GREER, P.A.**
    396 Alhambra Circle
    North Tower, 14th Floor
    Miami, FL 33134
    Telephone: (305) 373-4000
    Facsimile: (305) 373-4099
    *COUNSEL FOR 3M COMPANY AND*
    *ARTHUR FRY*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **February 16, 2016** a true and correct copy of the foregoing, was electronically filed with the Clerk using the CM/ECF filing system and served upon on all counsel of record and/or *pro se* party(ies) listed below, either via transmission of Notices of Electronic Filing generated by the CM/ECF filing system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Alan Amron, *Pro Se*
Plaintiff
255 Ervenia Street, #622
West Palm Beach, FL 33401
Telephone: (305) 373-7480
Facsímile: (347) 402-0194
E-mail: alanamron@yahoo.com

/s/ Mark A. Romance
MARK A. ROMANCE