## Settlement Agreement and Release

The parties to this Agreement are Minnesota Mining and Manufacturing Company, a Delaware corporation having its principal place of business in the State of Minnesota (hereinafter referred to as "3M") and Alan B. Amron (hereinafter referred to as "AMRON").

1. AMRON filed a complaint against 3M on December 10, 1997, in the United States District Court for the Eastern District of New York (Civil Action No. 97 7281) (hereinafter referred to as "the Action") alleging an actual controversy under the patent laws of the United States, Title 35 U.S.C. sections 34, 42 and 102 (a), (b) and (g) and for unfair competition arising under the Trademark Act of 1946, 15 U.S.C. section 1051 etc. as amended (hereinafter "Lanham Act") and the Sherman Antitrust Act 15 U.S.C. sections 1-7 and the Clayton Act 15 U.S.C. section 1121.

2. The parties now wish to resolve the aforementioned Action amicably and have agreed that AMRON shall file a Notice of Dismissal, dismissing the Action with prejudice, as soon as possible after the effective date of this Agreement and within ten (10) days after entry thereof. 3M shall pay to AMRON the sum of $12,000 (Twelve Thousand Dollars) ("the Negotiated Sum").

3. Effective with the entry of the Notice of Dismissal and receipt by AMRON of the Negotiated Sum, AMRON shall and does hereby release and forever discharge 3M, its officers, agents, directors, owners, employees, successors, assigns, divisions and affiliated and subsidiary corporations and each of them from any and all claims, demands, obligations, debts, damages, agreements, promises, or causes of action of every nature, kind and description whatsoever, in law or in equity, whether known or unknown, and whether suspected or unsuspected that AMRON ever had, now has, or hereafter can, shall or may have against 3M arising out of, directly or indirectly, or related in any way to the subject matter of the Action.

4. It is understood and agreed that this is a compromise and settlement of disputed claims and that nothing contained herein shall be construed as an admission by 3M that the claims set forth in the Action by AMRON are true, correct, accurate, or actionable.

5. AMRON represents and warrants that, to the best of his knowledge, no other person or entity has or has had any interest in the all claims, demands, obligations, debts, damages, agreements, promises, or causes of action referred to in this Agreement, that he has the sole right and exclusive authority to execute this Agreement and has the exclusive authority to receive the consideration specified in this Agreement, and that he has not sold, assigned, transferred, acquired, conveyed or otherwise disposed of any of all claims, demands, obligations, debts, damages, agreements, promises, or causes of action referred to in this Agreement.

6. 3M acknowledges that it has no right to prevent AMRON from manufacturing and selling AMRON's Press-on memo pads, as Originally Conceived, Introduced and Put Into Public Use in 1974. However, 3M reserves the right to request, and AMRON agrees to provide proof by clear and convincing evidence that memo pads manufactured by or for AMRON after the dismissal of the Action are the same as the Press-on memo pads, as Originally Conceived, Introduced and Put Into Public Use in 1974, if any questions arise in the future.

7. All agreements, covenants, obligations, representations and warranties, express or implied, oral or written between 3M and AMRON concerning the subject matter hereof are contained herein. No other agreements, covenants, obligations, representations or warranties, express or implied, oral or written have been made by either party hereto to any other party concerning the subject matter contained in this Agreement and in the Action. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter contained in this Agreement are merged herein. This is an integrated Agreement.

8. AMRON represents and states that in signing this Agreement he understands the terms of this Agreement, including without limitations, the nature, extent and duration of his rights and claims and that he has not been influenced to any extent whatsoever in entering into this Agreement by any representation or statements obligations, not expressly contained in this Agreement, and that he has relied on independently selected counsel.

9. AMRON represents and warrants that he has and shall continue to treat the terms of this Agreement as confidential and shall not disclose, either directly or indirectly, to third parties, make any public announcement with respect to this Agreement or any of the provisions hereof or the operations of the parties under them unless the written consent of 3M is first obtained for each such disclosure or announcement.

10. The Agreement shall be construed according to Minnesota law and shall be binding on the parties, their respective agents, representatives, successors, heirs and assigns.

11. The provisions of this Agreement shall be deemed separable. Therefore, if any part of this Agreement is rendered void, invalid or unenforceable, such rendering shall not affect the validity and enforceability of the remainder of this Agreement unless the part or parts that are void, invalid or unenforceable shall substantially impair the value of the Agreement to either party.

12. This Agreement shall become effective on the date that the last Party signs this Agreement. The Parties have signed the Agreement on the day and year written below.

MINNESOTA MINING AND
MANUFACTURING COMPANY

By: _____
    M. S. Nozari

Date: January 21, 1998

ALAN B. AMRON, Pro Se

By: _____

Date: 1/22/98