UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO.: 16-cv-80125-JIC/SELTZER

ALAN AMRON, Pro Se,

    Plaintiff,
v.

3M MINNESOTA MINING &
MANUFACTERING COMPANY[1] AND
ARTHUR FRY,

    Defendants.
_____

### DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT [DE 18] AND SUPPORTING MEMORANDUM OF LAW

Defendants 3M COMPANY and ARTHUR FRY (collectively, "3M" or "Defendants") hereby move to dismiss the Amended Complaint [DE 18] and state as follows:

### Introduction

Plaintiff's Amended Complaint seeks to relitigate a case that was resolved 18 years ago. This is the second time that Plaintiff Alan Amron has sued 3M and demanded millions of dollars based on the meritless allegation that he was the first inventor of a repositionable sticky note and thus he should be publicly declared the inventor of the Post-it® Note. The first case quickly and appropriately ended in a modest settlement and broad release to 3M and a dismissal with prejudice. This case is barred by that release.

Plaintiff first sued 3M over the inventorship of the Post-it® Note in 1997. (*See* DE 1 at 3-30.)[2] At that time, he demanded more than $48 million in damages (*see id.* at 23-24), but

---

[1] 3M's correct legal name is 3M Company.
[2] All citations to pleadings filed by Plaintiff are to the relevant Pacer page number(s).

quickly settled all of his claims for $12,000 (Ex. A ¶ 2).  In the settlement, Plaintiff released all of the claims he had expressly asserted <u>and</u> all claims "of every nature, kind and description whatsoever, in law or in equity, whether known or unknown, and whether suspected or unsuspected that [PLAINTIFF] ever had, now has, or hereafter can, shall or may have against 3M arising out of, directly or indirectly, or related in any way to the subject matter of the [1997 Complaint]." (*Id.* ¶ 3).  Plaintiff also (1) released 3M and all of its employees; (*id.*); (2) "represent[ed] and state[d] that in signing" the Settlement Agreement, he had "not been influenced to any extent whatsoever" "by any representation or statements [or] obligations, not expressly contained in this Agreement" (*id.* ¶ 8); and (3) represented that he had relied on independently selected counsel (*id.*).

This case is barred in its entirety by the 1998 Settlement Agreement release.  Plaintiff admits the existence of the Agreement in his Amended Complaint (DE 18 at 6, 31), and courts routinely consider and enforce settlement agreement releases in ruling on a motion to dismiss. *See Sherrod v. Sch. Bd. of Palm Beach Cnty.*, 550 Fed. Appx. 809, 811-12 (11th Cir. 2013) (affirming dismissal of claims released by prior settlement agreement); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1312-13 (S.D. Fla. 2014) ("[A] Settlement Agreement is properly considered in evaluating, and, to the extent it is not ambiguous, can be enforced to resolve [a motion to dismiss].").

The terms of Plaintiff's release unambiguously cover all of the claims that Amron asserts here.  Plaintiff admits that the claims he is raising now are related to the allegations he made in 1997: "Inventorship is what I've sued 3M over recently.  I sued them over that in 1997 and I'm now suing them again for almost but not exactly the same thing . . . ." (DE 18 at 3.)  Since the release covers all claims "<u>related in any way</u> to the subject matter of the" 1997 litigation, the new

variations Plaintiff has made in the description of his legal claims make no difference. (Ex. A ¶ 3 (emphasis added).) Regardless of how he describes his claims regarding the inventorship of the Post-it® Note, they are barred because they arise out of and relate to the same subject matter that he sued on 18 years ago.

Finally, because Plaintiff expressly stated in the Settlement Agreement that he had "not been influenced to any extent whatsoever" "by any representation or statements [or] obligations, not expressly contained in this Agreement" (Ex. A ¶ 8), he cannot undo the Agreement by now alleging the very type of reliance he disclaimed then.

To be clear, 3M does not now and has never sought to prevent Plaintiff from manufacturing or selling the Press-on Memo pads that he says he originally conceived, or from telling the story of that purported invention. The 1998 Settlement Agreement expressly addresses that point. (Ex. A ¶ 6.)

Because this case is barred in its entirety by the Settlement Agreement—and also by the res judicata arising from the dismissal of the 1997 case—the Court should dismiss Plaintiff's Amended Complaint with prejudice. In the alternative, because the Amended Complaint does not state any viable claim on the merits, it can be dismissed with prejudice for that reason as well.

## Motion To Dismiss

The Court may dismiss Plaintiff's Amended Complaint for the following reasons:

1. Plaintiff's claims are barred by the doctrine of release and res judicata because in 1998 he released and forever discharged 3M and its employees from all claims that arise out of or relate in any way to the subject matter of the 1997 Complaint, which was dismissed with prejudice.

      2.      Plaintiff's claims are barred because, even taking the factual allegations set forth in the Amended Complaint as true, he does not and cannot allege any recognizable claim.

## MEMORANDUM OF LAW

## FACTUAL BACKGROUND

**The 1997 Complaint**

Plaintiff sued 3M in December 1997 ("1997 Complaint"), alleging that he created, developed, and offered for sale a sticky note he marketed as the "Press-On Memo" in 1974. (DE 1 Ex. C at 4, 12.) He claimed that, among other things, (a) 3M violated the law by falsely representing to the patent office between 1977 and 1995 that it was the first to have conceived of a repositionable sticky note with "special adhesive" (*id.* at 4-11); (b) 3M had an obligation to disclose Plaintiff's earlier invention to the patent office and the public (*id.* at 13); (c) 3M engaged in unclean hands through its false patent filings (*id.* at 18); and (d) he suffered irrevocable financial injury due to 3M's "false patent filings" (*id.* at 13, 18, 19).

**The Settlement Agreement**

The parties entered into a settlement agreement in January 1998 that provided Plaintiff would receive $12,000 in exchange for dismissing the 1997 Complaint with prejudice. (Ex. A ¶ 2.) The Settlement Agreement also provided 3M's acknowledgment that it "has no right to prevent [Plaintiff] from manufacturing and selling . . . Press-on memo pads." (*Id.* ¶ 6.) Plaintiff granted 3M a broad release for all claims "arising out of" or "related in any way" to the subject matter of the 1997 Complaint. (*Id.* ¶ 3.) He agreed that "all agreements" between the parties were contained in the Settlement Agreement (*id.* ¶ 7), and that he had "not been influenced to any extent whatsoever in entering into the Agreement by any representations or statements obligations [sic] not expressly contained" in the Agreement (*id.* ¶ 8). He also represented that he had relied on independently selected counsel. (*Id.*)

4

**The 2011 Communications**

In 2011, Plaintiff's counsel sent 3M a letter advising that he intended to write a book about how he "put into practice first his 'Press-on Memo re-positionable sticky notes.'" (DE 20-4 at 32.) 3M responded by stating that "3M has never sought to prevent, nor does anything in the Settlement Agreement preclude, [Plaintiff] from making accurate public statements about his purported work on his version of sticky notes." (*Id.* at 34.)

**The 2016 Amended Complaint**

In 2016, Plaintiff again sued 3M, stating that "I'm now suing [3M] again for almost but not exactly the same thing" as the allegations in the 1997 Complaint. (DE 18 at 3.) He alleges that the 2016 suit is "more about" how 3M is "continually damaging" him and his "reputation as an inventor" by "saying they're the inventor of the Post-it Note." (*Id.*) Plaintiff formally asserts claims for negligence, defamation, unclean hands, and fraudulent misrepresentation. (DE 18 at 17-27.) The Amended Complaint also implies that Plaintiff may seek to state a claim that 3M breached the Settlement Agreement (*see id.* at 6) and that he may seek to avoid the obligations in the Settlement Agreement by asserting he or his counsel was fraudulently induced to enter the agreement (*see id.* at 28, 31). Plaintiff seeks $400 million in damages. (*Id.* at 27.) The repeated, core allegation in each count and implied claim is that 3M knew or should have known that he was the first inventor of a repositionable sticky note, that 3M falsely stated that its employees invented the Post-it® Note, and that Plaintiff was emotionally and financially harmed by 3M's conduct. (*See, e.g.*, *id.* at 17-21, 25, 26.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level . . . on the

5

assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). A court may dismiss a complaint on a dispositive issue of law. *See Hernandez v. Bank*, 2015 WL 9302827, at *3 (S.D. Fla. Dec. 21, 2015). In considering a motion to dismiss, "the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff." *Michel v. NYP Holdings, Inc.*, --- F.3d ---, 2016 WL 860647, at *4 (11th Cir. Mar. 7, 2016). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1187 (11th Cir. 2002)).

## ARGUMENT

### A. Plaintiff's Claims Against 3M And Arthur Fry Are Barred By A Release.

In the settlement Plaintiff reached with 3M in 1998, Plaintiff released the claims in his 1997 Complaint and all future claims "arising out of" or "related in any way" to the subject matter of that suit. (*See* Exhibit A ¶ 3.) This release bars all of Plaintiff's claims in this action, with the exception of Plaintiff's alluded to but unpleaded claim for breach of the Settlement Agreement itself, which fails for the separate reasons described below.

#### 1. The Court May Consider And Enforce The Settlement Agreement In This Motion To Dismiss.

The Court may consider and enforce the Settlement Agreement in deciding 3M's motion to dismiss because it is specifically referenced in the Amended Complaint and it is central to Plaintiff's claims. Courts in this district routinely enforce unambiguous settlement agreements by dismissing released claims at the pleadings stage. *See Sherrod*, 550 Fed. Appx. at 811-12 (affirming dismissal of claims released by prior settlement agreement); *Alhassid*, 60 F. Supp. 3d at 1312-13 (collecting cases and dismissing claims released by prior settlement agreements). It

does not matter that Plaintiff failed to attach the Agreement as an exhibit.  "[I]n the Eleventh Circuit, when a complaint lacks a central exhibit . . . the defendant may supplement the record with the necessary documentation to allow the court to consider the defendant's motion challenging the complaint substantively." *Lahtinen v. Liberty Int'l Fin. Servs., Inc.*, 2014 WL 351999, at *4 (S.D. Fla. Jan. 31, 2014); *see generally* 4 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1327 (3d. ed.).  If the document "is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged," considering it does not convert the motion to dismiss into one for summary judgment. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

The Amended Complaint repeatedly discusses Plaintiff's 1997 lawsuit against 3M (*see, e.g.*, DE 18 at 3, 5, 29, 31) and the 1998 Settlement Agreement that resolved that lawsuit (*id.* at 6, 28-31).  Plaintiff also attached exhibits relating to the negotiation of the 1998 settlement agreement.  (DE 20-4 at 14-26.)  *See Smith v. Miami-Dade County*, 621 Fed. Appx. 955, 960 n.2 (11th Cir. 2015) (considering settlement agreement on a motion to dismiss because it was "central to [Plaintiff's] retaliation claim").  He also obliquely asserts that the Amended Complaint might be read to assert a claim for breach *of that agreement*.  (DE 18 at 6.)  Accordingly, the Settlement Agreement is central to Plaintiff's allegations.  The Court may therefore consider the Agreement as part of the pleadings for purposes of this motion without converting it into a motion for summary judgment. *SFM Holdings*, 600 F.3d at 1337.

    **2.  The Settlement Agreement Releases All Of Plaintiff's Current Claims.**

The broad language of the Settlement Agreement's release covers all of the claims Plaintiff formally asserts in this lawsuit.  The subject matter of the 1997 litigation was Plaintiff's

claim that he—not 3M—was the inventor of the sticky-note concept, and the Settlement Agreement broadly released all claims arising out of or related in any way to that subject matter:

> [PLAINTIFF] shall and does hereby release and forever discharge 3M, its . . . agents . . . employees . . . and each of them from any and all claims, demands, obligations, debts, damages, agreements, promises, or causes of action of every nature, kind and description whatsoever, in law or in equity, whether known or unknown, and whether suspected or unsuspected that [PLAINTIFF] <u>ever had, now has, or hereafter can, shall or may have against 3M arising out of, directly or indirectly, or related in any way to the subject matter of the Action</u>.

(Ex. A (emphasis added).)

A settlement agreement is a contract, and hence the "[p]rinciples governing general contract law apply to interpret settlement agreements."[3] *Monahan v. Comm'r of Internal Revenue*, 321 F.3d 1063, 1068 (11th Cir.2003) (quotation omitted); *Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 901 (Minn. 2012) (same). "Where the plain meaning of an agreement is clear, [a court] may not go beyond the four corners of the document to look for additional evidence of the drafters' intentions." *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004) (citing Restatement (Second) of Contracts ch. 9, intro. note (1981)).

The scope of the release in the Settlement Agreement is plain on its face, and it covers all of Plaintiff's claims in this case. (*See* Ex. A ¶ 3.) The terms "arising out of" and "relating to" are "routinely construed broadly" in the context of settlement agreements. *See Alhassid*, 60 F. Supp. 3d at 1313. But a broad reading of "arising out of" and "relating to" is not necessary here. Plaintiff's current lawsuit, just like the last one, focuses squarely on his claims regarding the "first inventorship" of the 3M Post-it® Note. (*See* Factual Background, *supra*.) Plaintiff's 1997 Complaint alleged that 3M falsely claimed to public entities that 3M employees were the first

---

[3] The Settlement Agreement provides that it shall be construed under Minnesota law. (Ex. A ¶ 10.) For purposes of this motion, the Court need not decide whether Minnesota or Florida law applies to the release, because the result is the same under both states' laws.

inventors of a repositionable sticky note, and that Plaintiff was the rightful inventor. The complaint Plaintiff filed over 18 years later is premised on the very same "subject matter." (Ex. A ¶ 3.) Simply put, both cases rest on the very same factual allegations.

Each of the four claims expressly stated in the Amended Complaint "arises out of" or "relates to" the subject of Plaintiff's claim in his 1997 Complaint that he should be credited with "first inventorship" of the 3M Post-it® Note:

- Plaintiff alleges in support of his first cause of action ("Continuing Tort – Negligence") that 3M "knew or should have known that Post-it notes product sticky notes repositionable reusable paper memo notes combination pads was created and invented by the Plaintiff in 1973." (DE 18 at 17.)

- Plaintiff alleges in support of his second cause of action ("Defamation") that 3M's "Press n' Peel and Post-it Note" products were "defective in that, when it left the hands of Defendants to announce first to invent inventorship in 1974 of the products, while knowing full well, the Plaintiff had in fact already invented in 1973." (*Id.* at 21.)

- Plaintiff alleges in support of his third cause of action ("Continuing Tort – Unclean Hands") that 3M "expressly and continually warrant that" 3M's products were "invented by '3M' and Arthur 'Fry,' as described above." (*Id.* at 25.)

- Plaintiff alleges in support of his fourth cause of action ("Continuing Tort – Fraudulent Misrepresentation") that 3M "continue[s] to this day in 2016 to falsely and fraudulently represent" that 3M's Post-it® Note product was "in fact invented by '3M' and Arthur 'Fry' in 1974, when in fact they knew or should have known that Plaintiff 'Amron' invented it in 1973." (*Id.* at 26.)

By entering into the Settlement Agreement and agreeing to the broad terms of the release, Plaintiff released all of these claims against 3M, its agents, and its employees, including Defendant Arthur Fry. (*See id.* at 14 (stating Fry "is/was an employee of Defendant '3M'").) These claims should therefore be dismissed with prejudice.

### 3. Plaintiff Cannot Avoid The Settlement Agreement By Claiming It Was Fraudulently Induced.

In passing, Plaintiff states that he may believe he was induced to settle by misleading statements made in the negotiations. (DE 18 at 6, 28.) That allegation, however, is directly

9

contradicted by Plaintiff's own previous statement that he did not rely on any such statements in entering the Settlement Agreement. That previous statement is controlling. The Settlement Agreement contains not just an integration clause but also a specific disclaimer by Plaintiff that he did not rely on any representations or statements not contained in the Settlement Agreement in entering the Agreement. (*See* Ex. A ¶¶ 7, 8.) These contractual terms bar any claim of fraudulent inducement. *See OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 2015 WL 5559897 at *3 (D. Minn. Sept. 21, 2015) (dismissing fraud claim because "[t]he parties' contract includes both general and specific disclaimers . . . [thus] [Defendant's] representations . . . could not be relied upon by [Plaintiff] as a matter of law."); *Ellering v. Sellstate Realty Sys. Network, Inc.*, 801 F. Supp. 2d 834, 845 (D. Minn. 2011) (noting that, under Minnesota law, a plaintiff cannot rely on a defendant's representations when the plaintiff's reliance directly contradicts a provision of the contract); *Thomas W. Lyons, Inc. v. Sonus-USA, Inc.*, 2009 WL 306703 (D. Minn. Feb. 9, 2009) ("[F]raud is ineffective as a defense to enforcement of a contract term when the contract provision 'explicitly states a fact completely antithetical to the claimed misrepresentations.'") (quoting *Commercial Prop. Invs, Inc. v. Quality Inns Int'l, Inc.*, 938 F.2d 870, 875 (8th Cir. 1991)). Additionally, the Settlement Agreement makes clear that Plaintiff represented that he had relied on independently selected counsel. (Ex. A ¶ 8.)

*   *   *

In exchange for a $12,000 payment, Plaintiff forever released all claims against 3M related to his allegation that he invented the Post-it® Note. Having received the benefit of that bargain, Plaintiff is now "estopped from renouncing his part of the bargain—forgoing further

litigation" involving inventorship of the Post-it® Note. *See Sherrod*, 550 Fed. Appx. at 812. This is an independently sufficient reason to dismiss the Amended Complaint.

### B. Plaintiff's Claims Are Barred By Res Judicata.

Plaintiff's claims are also barred under the doctrine of res judicata. Where, as here, the parties consented to a stipulated dismissal with prejudice based on a settlement agreement, the effect of res judicata is controlled by "the matters specified in the settlement agreement, rather than the original complaint." *Norfolk*, 371 F.3d at 1288. In other words, the scope of the preclusive effect of a dismissal should be determined by "the terms of the Settlement Agreement, as interpreted according to traditional principles of contract law." *Id.* at 1289. As explained above, the Settlement Agreement released all of Plaintiff's claims against 3M and its employees that "arise out of" and "relate to" "the subject matter" of the 1997 Complaint. This broad release applies to each of the claims asserted in the Amended Complaint. Plaintiff's Complaint should therefore be dismissed for the independently sufficient reason that it is barred by res judicata.

### C. Plaintiff Has Not And Cannot State A Cause of Action.

Even if Plaintiff's claims were not barred by release and res judicata, they should be dismissed for failure to state a cause of action. Taking the allegations as true for the purposes of this motion, Plaintiff claims that he invented a repositionable sticky note in 1973, before 3M invented the Post-it® Note, and that he has been damaged by 3M's public statements that it invented the Post-it® Note. But these allegations do not and cannot state a claim.

### Count I – Negligence

Plaintiff's negligence claim fails as a matter of law because he has not identified any legally recognized duty owed to him by Defendants. In his negligence claim, Plaintiff asserts that 3M had a duty to assure that the inventorship of the Post-it® Note would not cause others to suffer damages, and that 3M breached that duty by failing to research and determine that Plaintiff

11

invented a repositionable note in 1973, and by continuing to make false and misleading first inventorship claims to the USPTO and the public at large. (DE 18 at 17-19.) There is no such duty. 3M's statements to the USPTO do not give rise to a private cause of action or liability to a third party such as Plaintiff. *See, e.g.*, *Sioux Biochemical, Inc. v. Cargill, Inc.*, 410 F. Supp. 2d 785, 796 (N.D. Iowa 2005) (former licensee's alleged ex parte statement to USPTO that it was inventor of process it sought to have patented was not actionable by third party claiming inventorship); *see also Brown v. Toscano*, 254 F.R.D. 690, 695 (S.D. Fla. 2008) (holding that the statute authorizing the director of the USPTO to decide inventorship in a pending patent application does not provide a private cause of action).

At best, Plaintiff's remedy was to seek correction of inventorship and attack the validity of any patent issued based on Defendants' alleged misrepresentations or omissions—a claim which he already asserted in the 1997 Case and forever released in the Settlement Agreement. Because there is no individual duty owed by Defendants to Plaintiff with respect to representations made to the USPTO, the negligence count fails to state a cause of action.

**Count II – Defamation**

Plaintiff's defamation claim fails because (1) the alleged defamatory statements are not statements "about" Plaintiff; and (2) Plaintiff has not alleged sufficient facts about the alleged misrepresentations to state a claim for defamation.

"The elements of a defamation claim are: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the statement caused injury to [the] plaintiff." *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006). Plaintiff fails to state a claim that meets this standard. He alleges that he invented the combination of repositionable reusable paper notes product in 1973 and that 3M made false and

misleading claims of first inventorship in 1974, 1977, and 1980 through its Press n' Peel™® and Post-it® Note products, thereby slandering and defaming Plaintiff, who claims to be the true first inventor of the repositionable note. (DE 18 at 19-22.)

But these alleged defamatory statements are not about the Plaintiff and thus fail to support a cause of action for defamation. *See Brown v. Popular Mechanics*, 37 F.3d 1503 (8th Cir. 1994) (holding that defamation claim was properly dismissed where plaintiff "failed to plead how the allegedly defamatory statement … referred to him or would be understood by others as referring to him."). Plaintiff's inability to satisfy this element of defamation is an independently sufficient reason to dismiss this claim.

Plaintiff's defamation claim also fails to state a cause of action because Plaintiff fails to allege when the statements were made, who made them (*i.e.*, whether 3M or Fry), or to whom the statements were made. Plaintiff's failure to plead these basic facts also requires dismissal of Plaintiff's defamation claim in its entirety. *Morrison v. Morgan Stanley Props.*, 2007 WL 2316495, at *9 (S.D. Fla. Aug. 9, 2007) ("To assert a viable claim for slander the Plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred. Absent sufficient allegations, a claim for slander is properly dismissed for failure to state a cause of action."); *Callaway v. Hornbake*, 2012 WL 333769, at *6 (M.D. Fla. 2012). Along similar lines, because none of the statements alleged in the Amended Complaint is directly attributed to Fry, the defamation claim against Fry must be dismissed. *See Jackson v. N. Broward Cnty. Hosp. Dist.*, 766 So.2d 256, 257 (Fla. 4th DCA 2000) (A plaintiff must "link a particular remark to a particular defendant," and "specifically identify the persons to whom the allegedly defamatory comments were made").

13

**Count III – Unclean Hands**

The third count of Plaintiff's Amended Complaint, "Unclean Hands," must be dismissed because unclean hands is an affirmative defense and not a cause of action upon which relief can be granted.  *See, e.g.*, *Calloway v. Partners Nat'l Health Plans*, 986 F. 2d 446, 450-51 (11th Cir. 1993); *Regions Bank v. Old Jupiter, LLC*, 2010 WL 5148467, at *5 (S.D. Fla. 2010) *aff'd*, 449 Fed. App'x 818 (11th Cir. 2011); *see also Merrill v. Dunn*, 191 F. Supp. 2d 1346, 1355 (M.D. Fla. 2002).  Plaintiff's unclean hands allegations appear to relate to the alleged breach of an express or implied warranty.  Plaintiff claims that Defendants warranted that they were the inventors of Press n' Peel™® and Post-it® Notes and that those warranties were breached because Plaintiff is entitled to first inventorship.  (DE 18 at 25-26.)  These breach-of-warranty allegations are nonsensical and do not—and cannot—state a claim.  Plaintiff alleges no facts that would support his allegation that Defendants "warranted" anything about the invention of the Press n' Peel™® and Post-it® Notes products to Plaintiff.  Plaintiff also does not allege that he purchased any of Defendants' sticky note products or explain how the alleged breach of any alleged "warranty" caused any harm to him.  Plaintiff's "inventorship" allegations simply cannot state a claim for breach of warranty.

**Count IV – Fraudulent Misrepresentation**

Plaintiff's fraudulent misrepresentation count (DE 18 at 26-27) fails to state a claim because, even taking Plaintiff's allegations as true, Plaintiff cannot show justifiable reliance as a matter of law.  The elements for fraudulent misrepresentation are: "(1) false statement of material fact or suppression of truth by the defendant; (2) the defendant knew or should have known the statement was false, or made the statement without knowledge as to truth or falsity; (3) the defendant intended the false statement or omission to induce the plaintiff's reliance; and

(4) the plaintiff justifiably relied to his detriment." *Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1122-23 (M.D. Fla. 2009).

Plaintiff's fraudulent-misrepresentation claim is based, again, on his allegation that 3M misrepresented the inventorship of the Press n' Peel™® and Post-it® Notes products to the public, the USPTO, and Plaintiff. (DE 18 at 26-27). These alleged statements are not actionable because Plaintiff could not have "justifiably relied" on them. After all, Plaintiff alleges he knew all along that he was the true inventor. (*See, e.g.*, DE 18 at 3.) Plaintiff could not have relied on 3M's alleged statements at all, and indeed, the Amended Complaint does not make any allegation of reasonable or justifiable reliance by Plaintiff. But even if Plaintiff had alleged reliance it would have been unjustifiable as a matter of law. *See, e.g.*, *In re Cacciatore*, 1998 WL 412644, at *2 (E.D.N.Y. Jul. 21, 1998) ("[T]he recipient of a fraudulent misrepresentation 'is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.'") (quoting Restatement (Second) of Torts § 541 (1976)).

It is irrelevant whether the public or the USPTO relied on the alleged statements. For purposes of a fraudulent misrepresentation claim, it must be "the [P]laintiff [who] justifiably relied to his detriment." *See, e.g.*, *Sioux Biochemical*, 410 F. Supp. 2d at 796-98 (holding and finding that inventor's allegation that patent applicant had falsely claimed inventorship failed to state claim for fraudulent misrepresentation).

Finally, Plaintiff's fraudulent-misrepresentation claim also must be dismissed because his general allegations that 3M made misrepresentations of inventorship (DE 18 at 26-27) are insufficient to satisfy Rule 9(b). *Combe v. Flocar Inv. Grp. Corp.*, 977 F. Supp. 2d 1301, 1306 (S.D. Fla. 2013) (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)).

15

### D. Plaintiff Cannot Succeed On An Unpleaded Breach-Of-Contract Claim.

Plaintiff does not, and cannot, state a claim for breach of the 1998 Settlement Agreement. Plaintiff states that he "felt [3M] was breaching the 1998 settlement agreement" by telling the public that its employees invented the Post-it® Note. (DE 18 at 6, 31.) 3M does not understand this sentence to plead a breach-of-contract claim, but out of an abundance of caution, 3M will explain why such a claim could not possibly succeed: the Settlement Agreement does not restrict what 3M or its employees can say about the invention of the Post-it® Note. (*See* Ex. A ¶¶ 4, 7.) Under Minnesota law, the plain meaning of the Settlement Agreement must be applied. *Anchor Bank, N.A. v. Gulbransen*, 2016 WL 281208, at *2 (Minn. Ct. App. Jan. 25, 2016) ("If 'a contract is unambiguous, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent.'") (quoting *Knudsen v. Transp. Leasing/Contract, Inc.*, 672 N.W.2d 221, 223 (Minn. Ct. App. 2003)). Nothing in the Settlement Agreement limits what 3M can say about the Post-it® Note. The Agreement thus does not contain a term on this issue that could be breached.

The Settlement Agreement also contains a full integration clause that provides that "all agreements" between the parties "are contained herein." (Ex. A ¶ 6.) Plaintiff therefore cannot claim that 3M violated some contractual duty outside of the Settlement Agreement. *See Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312 (Minn. 2003) ("A merger clause establishes that the parties intended the writing to be an integration of their agreement."); *Smith v. Genetic Depot, Inc.*, 2013 WL 627065, at *7 (D. Minn. Feb. 20, 2013) ("Because the [agreement] is an integrated document, [Plaintiff] cannot use the prior proposal to vary the terms of the [a]greement.").

## **CONCLUSION**

3M Company and Arthur Fry respectfully request that the Court dismiss this case with prejudice and grant them such further relief as is just and proper.

DATED: March 16, 2016.　　　　　　By: */s/Mark A. Romance*
　　　　　　　　　　　　　　　　　　　MARK. A ROMANCE
　　　　　　　　　　　　　　　　　　　Florida Bar No. 021520
　　　　　　　　　　　　　　　　　　　E-mail: mromance@richmangreer.com
　　　　　　　　　　　　　　　　　　　GEORGIA A. THOMPSON
　　　　　　　　　　　　　　　　　　　Florida Bar No. 100181
　　　　　　　　　　　　　　　　　　　E-mail: gthompson@richmangreer.com
　　　　　　　　　　　　　　　　　　　**RICHMAN GREER, P.A.**
　　　　　　　　　　　　　　　　　　　396 Alhambra Circle
　　　　　　　　　　　　　　　　　　　North Tower, 14th Floor
　　　　　　　　　　　　　　　　　　　Miami, FL 33134
　　　　　　　　　　　　　　　　　　　Telephone: (305) 373-4000
　　　　　　　　　　　　　　　　　　　Facsimile: (305) 373-4099
　　　　　　　　　　　　　　　　　　　*COUNSEL FOR 3M COMPANY AND*
　　　　　　　　　　　　　　　　　　　*ARTHUR FRY*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **March 16, 2016** a true and correct copy of the foregoing, was electronically filed with the Clerk using the CM/ECF filing system and served upon on all counsel of record and/or *pro se* party(ies) listed below, either via transmission of Notices of Electronic Filing generated by the CM/ECF filing system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**SERVICE LIST**

Alan Amron, *Pro Se*
Plaintiff
255 Ervenia Street, #622
West Palm Beach, FL 33401
Telephone: (305) 373-7480
Facsímile: (347) 402-0194
E-mail: alanamron@yahoo.com

                                              /s/ Mark A. Romance
                                              MARK A. ROMANCE